UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

DEBORAH DONOGHUE,

                *Plaintiffs*,

    *-against-*

SALIM GHAURI,

                *Defendants*.

    *-and-*

NETSOL TECHNOLOGIES, INC.,

             *Nominal Defendants*.

-----------------------------------------------------------X

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: June 25, 2015 |

14 Civ. 6383 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Deborah Donoghue ("Donoghue"), a security owner of nominal defendant Netsol Technologies, Inc. ("Netsol"), seeks to recover short-swing profits allegedly realized by defendant Salim Ghauri ("Defendant" or "Ghauri") from Ghauri's transactions in Netsol's securities pursuant to Section 16(b) of the Securities Exchange Act of 1934. Defendant moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12 for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. The motion is denied.

1

## BACKGROUND[1]

Netsol is a Nevada corporation with its main offices in Calabasas, California.  Compl. ¶

3.  Netsol's common stock is publicly traded on NASDAQ.  *Id.* ¶ 4.  Ghauri was the CEO and

Chairman of Netsol Technologies, Ltd. ("Netsol Ltd."), which is a majority-owned subsidiary of

Netsol with headquarters in Lahore, Pakistan.  *Id.* ¶ 11.  Ghauri also served as a director of

Netsol from 1999 through July 17, 2012, and from July 17, 2013 through June 12, 2014.  *Id.* ¶¶

6-10.  Ghauri oversaw Netsol's day to day operations and business affairs in the Asia-Pacific

region.  *Id.* ¶ 12.  Ghauri was "in charge" of Netsol Ltd.  *Id.* ¶ 17.  In particular, he led the

software development team of Netsol Ltd., and was responsible for maintaining and developing

relationships with Asia-Pacific companies in the industry.  *Id.* ¶ 13.  The Asia-Pacific region

accounts for a large portion of Netsol's revenue worldwide: in 2011, the region accounted for

68.86% of worldwide revenue; in 2012, 74.28%; and in 2013, 71.29%.  *Id.* ¶¶ 14-16.

Ghauri engaged in several transactions in violation of Section 16(b).  *Id.* ¶¶ 20, 22, 33-34.

Ghauri concealed these transactions such that Plaintiff could not discover them until February

14, 2014, when Ghauri made a Form 4 filing pursuant to an order from the SEC.  *Id.* ¶ 23.  Prior

to then, Ghauri failed to disclose trades required to be reported; falsely reported holdings on SEC

forms; falsely reported holdings on Netsol proxy materials; and falsely reported holdings in

periodic reports issued by Netsol.  *Id.* ¶ 24.

On the day Plaintiff learned of these violations by means of the public filing, Plaintiff

made a demand on Netsol for recovery of all short-swing profits.  *Id.* ¶ 27.  Netsol's Board of

Directors includes two of Ghauri's brothers; one of them, Najeeb Ghauri, is the current Chairman

and CEO.  *Id.* ¶ 28.  On July 23, 2014, Netsol informed Plaintiff that Netsol had settled the

---

[1] The allegations in the Amended Complaint are taken as true for present purposes.

matter with Ghauri for $33,197. *Id.* Plaintiff's counsel "objected to the insufficiency of the

settlement amount and inconclusive correspondence with Netsol's counsel followed." *Id.* ¶ 29.

Ghauri made the following purchases of Netsol shares:

| *Date* | *Number of Shares* | *Price per Share* |
|---|---|---|
| August 5, 2011 | 10,000 | 7.80 |
| August 12, 2011 | 10,000 | 8.20 |
| August 12, 2011 | 10,000 | 8.30 |
| November 1, 2011 | 5000 | 4.70 |
| November 3, 2011 | 4238 | 4.70 |
| November 4, 2011 | 761 | 4.70 |
| November 9, 2011 | 5000 | 4.50 |
| November 15, 2011 | 44,930 | 4.20 |
| November 16, 2011 | 70 | 4.20 |
| May 10, 2013 | 5000 | 10.62 |
| June 6, 2013 | 5800 | 10.00 |

*Id.* ¶ 33. Ghauri made the following sales of Netsol shares:

| May 10, 2011 | 2110 | 18.50 |
|---|---|---|
| June 28, 2011 | 5000 | 17.60 |
| June 28, 2011 | 2000 | 17.70 |
| June 30, 2011 | 3289 | 17.40 |
| July 5, 2011 | 4599 | 17.40 |
| July 6, 2011 | 3111 | 17.40 |

| August 8, 2011 | 10,000 | 7.00 |
| May 3, 2013 | 5000 | 12.51 |
| July 8, 2013 | 917 | 10.30 |
| July 9, 2013 | 4083 | 10.30 |

*Id.* ¶ 34. Using the "lowest-in, highest-out" method for computing realized profits, Plaintiff

seeks the recovery of approximately $310,000 plus pre-judgment interest, against which the

previous payment of $33,197 may be offset. *Id.* ¶¶ 33-35.

## DISCUSSION

### I.   Applicable Law

#### A.  Motion to Dismiss

A court considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) must accept

"all properly pled factual allegations in the complaint as true and draw[] all reasonable inferences

in favor of the plaintiff." *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 284 (2d

Cir. 2013); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The complaint

must "provide the grounds upon which [the plaintiff's] claim rests through factual allegations

sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar

Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). At this stage,

the Court does not "assay the weight of the evidence which might be offered in support" of the

claim. *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011). A claim must be dismissed,

however, where, as a matter of law, "the allegations in a complaint, however true, could not raise

a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

4

### B. Personal Jurisdiction

When opposing a pre-discovery motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing of jurisdiction based on legally sufficient allegations of jurisdiction to defeat the motion. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013). Under the Securities Exchange Act, federal courts may exercise personal jurisdiction over a defendant to the full extent of the Due Process Clause of the Fifth Amendment. *S.E.C. v. Gonzalez de Castilla*, 2001 WL 940560, at *3 (S.D.N.Y. Aug. 20, 2001) (citing 15 U.S.C. § 78aa). "Since *International Shoe Co v. Washington*, the touchstone due process principle has been that, before a court may exercise jurisdiction over a person or an organization, such as a bank, that person or entity must have sufficient minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (internal quotation marks omitted) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In its due process analysis, the Court must undertake a minimum contacts inquiry and a reasonableness inquiry. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010).

### C. Section 16(b)

Section 16(b) of the Securities Exchange Act is a strict liability provision which requires insiders to disgorge any short-swing profits regardless of their intent while trading. *Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1417 (2012). Short swing profits are those derived by an insider from the purchase and sale, or sale and purchase, of the issuer's securities within any six-month period. *Roth v. Goldman Sachs Grp., Inc.*, 740 F.3d 865, 869 (2d Cir. 2014). The statute seeks to prevent an issuer's directors, officers, and principal stockholders

"from engaging in speculative transactions on the basis of information not available to others." *Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 173-74 (2d Cir. 2012) (quoting *Huppe v. WPCS Int'l Inc.*, 670 F.3d 214, 218 (2d Cir. 2012)).  Suit may be brought by an owner of any security of the issuer if the issuer "shall fail or refuse to bring such suit" or "shall fail diligently to prosecute the same thereafter." 15 U.S.C. § 78p(b).

## II.   Analysis

Defendant moves to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted.[2]  The motion is denied for the reasons described below.

### A. Personal Jurisdiction

Ghauri argues that the Court lacks jurisdiction over him because he has no intentional contacts with the United States: he is neither a citizen nor a resident of this country, he has never had a bank account in this country, and he does not conduct business in the United States.  Def. Mem. at 6-8.  This argument is rejected.

Plaintiff has made a *prima facie* showing of Ghauri's minimum contacts with the United States. At this stage, Plaintiff has shown that Ghauri's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court []here."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  This is because "Second Circuit authority dictates that a district court may exercise its personal jurisdiction in a securities action if the defendant's activities 'could reasonably be expected to be visited upon United States shareholders.'"  *Donoghue v. Dicut, Inc.*, 2002 WL 1728539, at *2 (S.D.N.Y. July 24, 2002)

---

[2] Defendants have withdrawn their argument pertaining to improper service of process, which was mooted after Plaintiff properly served Ghauri. *See* Dkt. 32, 33.

(quoting *S.E.C. v. Unifund*, 910 F.2d 1028, 1033 (2d Cir. 1990)).  As a result, the exercise of

jurisdiction over a defendant who trades shares of a U.S. corporation, on a U.S. stock exchange,

is proper even where the defendant has no other connections to the United States.

Here, shares of Netsol are owned by citizens of the United States, and Ghauri's alleged

violation "created a near certainty that shareholders in the United States would be adversely

affected." *S.E.C. v. Alexander*, 2003 WL 21196852, at *2 (S.D.N.Y. May 20, 2003).  Contrary

to Defendant's arguments, Reply at 7, the fact that Ghauri's violations resulted in a small amount

of alleged profits does not strip the Court of jurisdiction.  In assessing jurisdiction, "courts have

looked primarily to the nature of the market activity rather than to its quantitative impact."

*Alexander*, 2003 WL 21196852, at *2-3.  The Complaint alleges that Ghauri traded on a U.S.-

based stock exchange in securities of a U.S.-based company for which he previously served as an

officer or director for over a decade.  These actions are "clearly directed" towards the United

States, *S.E.C. v. Compania Internacional Financiera S.A.*, 2011 WL 3251813, at *5 (S.D.N.Y.

July 29, 2011), and Ghauri's violations have "serious effects that can reasonably be expected to

be visited upon United States shareholders where, as here, the securities are those of a United

States company traded . . . on a United States exchange." *Unifund*, 910 F.2d at 1033.

Construing all factual allegations in the light most favorable to Plaintiff, the Complaint provides

a demonstration of jurisdiction more than sufficient to satisfy the minimum contacts inquiry.

The exercise of personal jurisdiction is reasonable as well.  The Court notes that "the

reasonableness inquiry is largely academic in non-diversity cases brought under a federal law

which provides for nationwide service of process because of the strong federal interests

involved." *Atlantica Holdings, Inc. v. BTA Bank JSC*, 2015 WL 144165, at *5 (S.D.N.Y. Jan.

12, 2015) (internal citation and quotation marks omitted).

Ghauri argues that the exercise of personal jurisdiction would not be reasonable here because "he lives thousands of miles away on the other side of the world, in Pakistan," and that "the ten hour time difference" compounds this problem. Reply at 6. In determining the reasonableness of the exercise of personal jurisdiction, the Court considers the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Queen Bee*, 616 F.3d at 173. Other than the distance and differing time zones between the U.S. and Pakistan, Ghauri fails to articulate any real burden. "Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant with only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129-30 (2d Cir. 2002) (internal citation and quotation marks omitted).

This is especially so when the remaining factors are considered. The forum has a strong interest in preserving the integrity of its securities markets and ensuring that its citizens have a means of redress for any violations of its securities laws. *See, e.g., Dicut*, 2002 WL 1728539, at *3 ("Because the just and fair resolution of securities cases protects the integrity of the United States securities markets, it is important for the District Courts to adjudicate matters brought under the Securities Exchange Act, and the United States has a significant and compelling interest in hearing this case."). Moreover, the suit can be efficiently resolved here and no alternative forum has been suggested in which Plaintiff could obtain redress.

8

Accordingly, the Court's exercise of personal jurisdiction over Ghauri survives the minimum contacts and reasonableness inquiries and adequately comports with due process. Defendant's motion to dismiss for lack of personal jurisdiction is denied.

### B. Failure to State a Claim

Defendant urges dismissal for failure to state a claim because of Netsol's pre-litigation resolution of the claim. Def. Mem. at 8-9. Plaintiff raises two arguments in opposition: first, that Section 16(b) never gives preclusive effect to an issuer's pre-litigation conduct, and second, even if it did, Netsol failed to diligently prosecute the claim against Ghauri and so the pre-litigation conduct here does not have a preclusive effect. Pl. Mem. at 17-22.

The Court need not decide whether or not Section 16(b) gives preclusive effect to all pre-litigation settlement conduct. This is because Plaintiff has adequately alleged that Netsol failed to diligently prosecute the claim against Ghauri. The Complaint alleges that Netsol, with which Ghauri maintained a close relationship, settled with Ghauri for approximately 15% of what Plaintiff alleges Ghauri owed. Plaintiff seeks the full amount of the gain. Compl. ¶¶ 28-29. The Complaint also alleges that Plaintiff objected to this settlement and that Netsol did not act on her objections. *Id.* ¶¶ 28-29.

Defendant raises arguments regarding the rationale and benefit of settlement, but the Court cannot consider such arguments at this stage of the litigation. In deciding this motion, the Court cannot assess the reasonableness of the settlement or the communications between the parties and determine whether prosecution of the case was diligent. Since this is a motion to dismiss, the Court must accept the allegations in the light most favorable to Plaintiff, and here Plaintiff has sufficiently alleged Netsol's failure to diligently pursue the claim against Ghauri. *See Lewis v. Arcara*, 401 F. Supp. 449, 452-53 (S.D.N.Y. 1975) (rejecting settlement between

company and employee for the full amount made in short-swing profits but returned in

installment payments).   Accordingly, the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

is denied.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is denied.  The Clerk of Court is directed

to terminate the motion at Docket Number 22.  The parties are directed to file a case

management plan by July 24, 2015.

Dated: New York, New York
      June 25, 2015

SO ORDERED

_____

PAUL A. CROTTY
United States District Judge